Opinion by Judge RAWLINSON; Dissent by Judge GOULD.
OPINION
RAWLINSON, Circuit Judge:
This case presents the issue of whether removal was proper under the “mass action” provision of the Class Action Fairness Act of 2005 (CAFA), Pub.L. No. 109-2, 119 Stat. 4 (2005), when plaintiffs moved for coordination pursuant to California Code of Civil Procedure section 404. CAFA authorizes federal removal for mass actions when “monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs’ claims involve common questions of law or fact....” 28 U.S.C. § 1332(d)(ll)(B)(i). Because we conclude that this CAFA jurisdictional requirement was not met under the totality of the circumstances in this case, we affirm the district court’s remand order.
I
Defendant-Appellant Teva Pharmaceuticals USA, Inc. (Teva) appeals the district court’s order remanding this case to state court. This case was one of twenty-six pending before the district court alleging injuries related to the ingestion of propox-yphene, an ingredient found in the Darvo-cet and Darvon pain medications, as well as in their generic brand counterparts. There are additional propoxyphene cases pending in multidistrict litigation in the Eastern District of Kentucky. See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig., 780 F.Supp.2d 1379 (E.D.Ky.2011).
Propoxyphene is a pain reliever that was used in the United States to treat mild to moderate pain from 1957 through November, 2010, when drugs containing propoxy-phene were taken off the market because of the Food & Drug Administration’s safety concerns. Teva held the rights to the generic formulary of Darvocet and Darvon, and Plaintiffs allege that Teva was involved in all aspects of the creation, distribution, and sale of generic propoxyphene products.
To date, more than forty actions have been filed in California state courts regarding products containing propoxy-phene. On October 23, 2012, a group of attorneys responsible for many of the pro-poxyphene actions filed a petition asking the California Judicial Council to establish *921 a coordinated proceeding for all California propoxyphene actions pursuant to California Code of Civil Procedure section 404. Section 404.1 provides:
Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.
After Plaintiffs’ petition for coordination was filed, Teva removed the case to federal district court under CAFA’s mass action provision.
CAFA provides federal district courts with original jurisdiction over “mass- actions” if the actions meet all of the statutory requirements. CAFA defines a mass action as:
any civil action ... in which monetary relief claims of 100 or more persons are •proposed to be tried jointly on the ground that the plaintiffs’ claims involve common questions of law or fact, ...
28 U.S.C. § 1332(d)(ll)(B)(i) (emphasis added). The only disputed issue in this case is whether Plaintiffs’ petition for coordination constitutes a proposal to be tried jointly under CAFA.
The district court found that there was no federal jurisdiction under CAFA because Plaintiffs’ petition for coordination did not constitute a proposal to try the cases jointly, and remanded the case back to state court. The district court distinguished this case from the Seventh Circuit’s decision in In re Abbott Laboratories, Inc., 698 F.3d 568 (7th Cir.2012), explaining that Plaintiffs’ petition for coordination differed from the Plaintiffs’ consolidation request in Abbott because Plaintiffs’ petition focused on pretrial matters while the Plaintiffs’ consolidation request in Abbott specifically sought consolidation “through trial.”
Defendants sought permission to appeal the district court’s remand order, which we granted on July 26, 2013. We review the district court’s remand order de novo. See Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir.2006).
II
The statutory issue for us to decide is whether the petition seeking coordination of the California propoxyphene actions was a proposal in substance for those actions to be tried jointly. This is a question of first impression in our circuit, as it was for the Seventh Circuit in Abbott.
We start from the well-established premise that the removal statutes are to be strictly construed. See Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir.2013). A corollary precept is that we apply a presumption against removal and construe any uncertainty as to removability in favor of remand. See id.; see also Tanoh v. Dow Chemical Corp., 561 F.3d 945, 953 (9th Cir.2009); Abrego Abrego 443 F.3d at 685. We have correctly observed that CAFA’s mass action provision is “fairly narrow,” Tanoh, 561 F.3d at 953, given that a qualifying mass action will only be present if there is an aggregate amount in controversy of five million dollars or more, at least one plaintiff who is a citizen of a state or foreign state different from that of any defendant, and “monetary relief claims *922 of 100 or more persons [that] are proposed to be tried jointly.” Id.; see also 28 U.S.C. § 1332(d). We expressly observed in Tanoh that CAFA “includfes] only actions in which the trial itself would address the claims of at least one hundred plaintiffs” and excludes “any civil action in which ... (IV) the claims have been consolidated or coordinated solely for pretrial proceedings.” 561 F.3d at 954; 28 U.S.C. § 1332(d)(ll)(B)(ii)(IV). And Tanoh makes clear, consistent with the plain language of CAFA, that the proposal to try claims jointly must come from the plaintiffs. 561 F.3d at 953-54. Further, if the statutory requirements under CAFA are not met, Tanoh rejects the idea that we can avoid these statutory terms merely by recourse to general statements in CAFA’s legislative history, or to the theory that plaintiffs should not be able to “game” jurisdictional statutes to remain in state court. Id. at 954.
Tanoh also instructs that plaintiffs are the “masters of their complaint,” and do not propose a joint trial simply by structuring their complaints so as to avoid the one hundred-plaintiff threshold. 561 F.3d at 953, 956; see also Anderson v. Bayer Corp., 610 F.3d 390, 393 (7th Cir.2010); Seimone, 720 F.3d at 883-84. Under this view, plaintiffs can structure actions in cases involving more than one hundred potential claimants so as to avoid federal jurisdiction under CAFA.[1]
Plaintiffs argue, and the district court agreed, that their analogous petition for coordination was not a proposal to try the cases jointly. We also agree. California Code of Civil Procedure section 404 allows the coordination of “all of the actions for all purposes.” However, the plaintiffs’ petition for coordination stopped far short of proposing a joint trial. This fact is important because, as discussed, both the Supreme Court and our court recognize that the plaintiff is, and should be, in control of selection of the litigation forum. See Standard Fire Ins. Co. v. Knowles, — U.S. -, 133 S.Ct. 1345, 1350, 185 L.Ed.2d 439 (2013) (reiterating in the CAFA context that plaintiffs are the “masters of their complaints”); see also Tanoh, 561 F.3d at 953 (referencing “the well-established rule that plaintiffs as masters of their complaint, may choose their forum by selecting state over federal court ... ”).
Plaintiffs asked for coordination under section 404, and submitted a Memorandum of Points and Authorities in support of the petition for coordination. We now turn to that memorandum to discern whether plaintiffs proposed that the claims of 100 or more persons were “to be tried jointly.” 28 U.S.C. § 1332(d)(ll)(B)(i).
On page 6 of the Memorandum of Points and Authorities, plaintiffs gave the following explanation for seeking coordination:
Petitioners’ counsel anticipates that the actions will ... involve duplicative requests for the same defendant witness depositions and the same documents related to development, manufacturing, testing, marketing, and sale of the Dar-vocet Product. Absent coordination of these actions by a single judge, there is *923 a significant likelihood of duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues.
One would be hard pressed to parse a proposal for a joint trial from this language. Rather, the obvious focus was on pretrial proceedings, i.e., discovery matters.
On page 7 of the memorandum, plaintiffs informed the court that coordination was also sought because “[u]se of committees and standardized discovery in a coordinated setting will expedite resolutions of these cases, avoid inconsistent results, and assist in alleviating onerous burdens on the courts as well as the parties.” Again, we see emphasis on pretrial proceedings with no mention of a joint trial.
On page 8, the plaintiffs urged coordination on the following bases:
One judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice; Common questions of fact or law are predominating and significant to the litigation; Coordination may serve the convenience of parties, witnesses and counsel the relative development of the actions and the work product of counsel; Coordination may facilitate the efficient utilization of judicial facilities and manpower; Coordination may enhance the orderly calendar of the courts; Without coordination, the parties may suffer from disadvantages caused by duplicative and inconsistent rulings, orders or judgments ...
(Emphases added).
Isolation of phrases such as “for all purposes,” “inconsistent judgments,” and “conflicting determinations of liability” to support a conclusion that the plaintiffs sought a joint trial completely ignores all references to discovery, including on the same page containing the reference to liability, where Plaintiffs stated: “[I]n light of the similarity of the actions, there will be duplicate discovery obligations upon the common defendants unless coordination is ordered. Coordination before initiation of discovery in any of the cases will eliminate waste of resources and will facilitate economy-” (Emphases added). As we read the plaintiffs’ petition for coordination, it is quite a stretch to discern a request for joint trial when the clear focus of the petition is on pretrial matters. Reliance on nine words to the exclusion of all else is inconsistent with the principle that any doubt about federal jurisdiction be resolved in favor of remand. See Scimone, 720 F.3d at 882; see also Abrego Abrego, 443 F.3d at 685. In particular, Defendants’ reliance on the plaintiffs’ reference to inconsistent judgments is on shaky ground because judgments may be rendered outside the confines of a trial. Default judgments and summary judgments come readily to mind. See Federal Rules of Civil Procedure 55 and 56 (providing for entry of judgment prior to trial).
Neither are we persuaded that we should reach the same result as the Seventh Circuit in Abbott. Not only did that case involve a completely different procedure, consolidation as opposed to coordination, see 698 F.3d at 570, the plaintiffs’ request in that case explicitly and expressly referenced “consolidation of the cases through trial and not solely for pretrial proceedings,” thereby removing any question of the plaintiffs’ intent. Id. at 571 (footnote reference and internal quotation marks omitted).
This case also differs from Mississippi ex rel. Hood v. AU Optronics, 701 F.3d 796 (5th Cir.2012), where the Fifth Circuit concluded that federal jurisdiction existed under CAFA when the State of Mississippi brought an action pursuant to the Missis *924 sippi Consumer Protection Act and the Mississippi Antitrust Act against defendants who manufactured liquid crystal display panels and harmed consumers by charging artificially inflated prices. See id. at 798-800. The Fifth Circuit concluded that the real parties in interest included the State and the individual consumers who purchased the products. See id. at 802. Because there were more than one hundred consumer claims at issue in the single lawsuit filed by the State, the Fifth Circuit held that CAFA conferred jurisdiction upon the federal court over the “mass action.” Id.
Unlike the AU Optronics case, the plaintiffs here have filed separate lawsuits, none of which have been initiated by the State, so the rationale articulated by the Fifth Circuit is inapposite, even were we inclined to adopt it.[2]
Finally, we consider the rulings of three different district court judges in this circuit who have determined that similar requests for coordination under this California procedural rule were not the equivalent of a request for a joint trial. See Gutowski v. McKesson Corp., No. C 12-6056 CW, 2013 WL 675540 (N.D.Cal. Feb. 25, 2013); Posey v. McKesson Corp., No. C 12-05939 RS, 2013 WL 361168 (N.D.Cal. Jan. 29, 2013); Rice v. McKesson Corp., No. C 12-05949 WHA, 2013 WL 97738 (N.D.Cal. Jan. 7, 2013). These eminent California judges were practitioners in California pri- or to taking the bench and their decisions, with their considerable knowledge of California procedural rules, reinforce our view of the appropriate disposition of this case. We would affirm this fourth California district court judge’s decision to remand this case to state court.
Ill
Because we conclude that Plaintiffs’ petition for coordination was not a proposal to try the cases jointly, we AFFIRM the district court’s order granting Plaintiffs’ motion to remand.[3]

. Amicus curiae Chamber of Commerce of the U.S.A. and amicus curiae PhRMA essentially argue that we should revisit Tanoh and that it has lost its precedential value, urging that plaintiffs should not be able to structure their complaints to avoid federal jurisdiction in light of the purposes of CAFA to curb class action and mass action abuses that have occurred in state courts. We reject this argument because we agree with the reasoning of Tanoh, because as a three-judge panel we do not have authority to overrule a prior circuit precedent, and because the Chamber of Commerce’s position would put us at odds with the Seventh Circuit, which cited Tanoh approvingly in Abbott, and the Eleventh Circuit, which did so in Seimone. See Abbott, 698 F.3d at 572; Seimone, 720 F.3d at 884.

. Amicus curiae Washington Legal Foundation argues that "joint trial” includes cases resolved in conjunction with each other, relying on the dictionary definition of "joint” and the statute's plain language. We agree that "joint trial” does not mean everyone sitting in the courtroom at the same time. However, as made obvious in this opinion, we disagree that mere invocation of the California coordination provision is sufficient to constitute a proposal for joint trial. Rather, as we have done here, we look to Plaintiffs’ petition and supporting documents to determine the extent of Plaintiffs’ request for coordination.

. We recognize that we have discretion to consider alternative bases for the exercise of federal jurisdiction, see Nevada v. Bank of America Corporation, 672 F.3d 661, 673 (9th Cir.2012). We agree with the district court that there is a lack of federal question jurisdiction because Plaintiffs' state law claims do not "aris[ej under the Constitution, laws, or treaties of the United States.” Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 805, 817, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).
We also agree with the district court's conclusion that complete diversity is lacking between the parties inasmuch as plaintiff Judith Romo and defendant McKesson Corporation are both California citizens. See Wisc. Dep’t of Corr. v. Schacht, 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) (requiring complete diversity of citizenship for federal jurisdiction).