# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-8031

_____

Dawn Atwell, et al.

*Respondent*s

v.

Boston Scientific Corporation

*Petitioner*

_____

No. 13-8032

_____

Althea Evans, et al.

*Respondent*s

v.

Boston Scientific Corporation

*Petitioner*

_____

No. 13-8033

_____

Laura Taylor, et al.

*Respondent*s

v.

Boston Scientific Corporation

*Petitioner*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 20, 2013
Filed: November 18, 2013
_____

Before WOLLMAN, LOKEN, and SHEPHERD, Circuit Judges.
_____

LOKEN, Circuit Judge.

In the Class Action Fairness Act of 2005 ("CAFA"), Congress permitted removal from state to federal court of certain class actions, including "mass actions." 28 U.S.C. §§ 1332(d), 1453(a) and (b). "[T]he term 'mass action' means any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact," § 1332(d)(11)(B)(i), but does not include an action in which "the claims have been consolidated or coordinated solely for pretrial proceedings," § 1332(d)(11)(B)(ii)(IV).

Groups of plaintiffs filed product liability actions in Missouri's Twenty-Second (City of St. Louis) Judicial Circuit against four manufacturers of transvaginal mesh medical devices. Three groups included claims against Boston Scientific Corporation

for alleged defects in its devices.[1] Each group comprised less than 100 plaintiffs. The three groups filed similar motions proposing that the state court assign each group "to a single Judge for purposes of discovery and trial." After the motion hearing, Boston Scientific removed the three cases to federal court. Two district judges granted plaintiffs' motions and remanded the cases to state court on the ground that no case included more than 100 plaintiffs and plaintiffs had not proposed to the state court that the actions be "tried jointly." Boston Scientific petitions for permission to appeal, arguing that the three groups of plaintiffs have proposed to try their cases jointly within the meaning of 28 U.S.C. § 1332(d)(11)(B)(i), transforming their cases into a single mass action subject to federal jurisdiction. Reviewing this issue *de novo*, see Raskas v. Johnson & Johnson, 719 F.3d 884, 886 (8th Cir. 2013), we conclude we have jurisdiction and, in each case, grant Boston Scientific leave to appeal and vacate the order remanding the case to state court.

## I. Two Jurisdictional Issues

**A.** Most orders remanding removed cases to state court are not appealable. 28 U.S.C. § 1447(d). CAFA created an exception to that rule, permitting a court of appeals to review an order remanding a "class action," including a mass action, "if application [to appeal] is made . . . not more than 10 days after entry of the [remand] order," § 1453(c)(1). Atwell argues we have no jurisdiction because these cases are not mass actions and therefore CAFA does not apply. This argument of course begs the question. The issue presented on appeal is whether the three cases *are* a mass action subject to federal jurisdiction under CAFA. If they are a mass action, then CAFA confers appellate jurisdiction to correct the district court errors in declining to accept federal jurisdiction. If they are not a mass action, then "we lack jurisdiction

---

[1]Like the parties, we will refer to these actions individually by the names of the first named plaintiffs, Dawn Atwell, Althea Evans, and Laura Taylor.

*to proceed further*."  Anderson v. Bayer Corp., 610 F.3d 390, 394 (7th Cir. 2010) (emphasis added).

**B.**  Evans and Taylor argue that Boston Scientific failed to file timely notices of removal.  When a plaintiff's initial pleading does not state a case that is removable under CAFA -- which was true here because each case involves claims by fewer than 100 persons -- the defendant must file a notice of removal "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).

Evans and Taylor argue their state court motions for assignment to a single judge gave sufficient notice the cases had become removable; therefore, Boston Scientific's notices of removal, filed nearly five months later, were untimely.  We disagree.  The thirty-day time limit begins running when a plaintiff "explicitly discloses" she is seeking a remedy that affords a basis for federal jurisdiction. Knudson v. Sys. Painters, Inc., 634 F.3d 968, 974 (8th Cir. 2011).  Here, plaintiffs' assignment motions attempted to limit their request to coordination of pretrial proceedings, which would keep the cases outside the definition of a mass action.  See 28 U.S.C. § 1332(d)(11)(B)(ii)(IV).  Only when plaintiffs' attorneys made clear the extent of consolidation being sought at the state court motions hearing did Boston Scientific have a basis for removal.  These oral statements, made at a court hearing and later transcribed, like deposition testimony, satisfy § 1446(b)(3)'s "other paper" requirement.  See Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 887 (9th Cir. 2010); Peters v. Lincoln Elec. Co., 285 F.3d 456, 465-66 (6th Cir. 2002).

## II.  The Merits

Although plaintiffs concede that their respective individual claims "involve common questions of law or fact," 28 U.S.C. § 1332(d)(11)(B)(i), state court plaintiffs

with common claims against a common defendant may bring separate cases with fewer than 100 plaintiffs each to avoid federal jurisdiction under CAFA -- unless their claims are "proposed to be tried jointly." See Romo v. Teva Pharm. USA, Inc., 731 F.3d 918, 922 & n.1 (9th Cir. 2013); Scimone v. Carnival Corp., 720 F.3d 876, 881-82 (11th Cir. 2013); Abrahamsen v. ConocoPhillips, Co., 503 F. App'x 157, 160 (3d Cir. 2012), cert. denied, 133 S. Ct. 1820 (2013); Anderson, 610 F.3d at 393-94; Tanoh v. Dow Chem. Co., 561 F.3d 945, 953 (9th Cir.), cert. denied, 558 U.S. 934 (2009). That proviso is the critical issue here -- did the distinct claims of these more than 100 plaintiffs, filed in the same court against the same defendant and asserting common issues, become a single, removable mass action because plaintiffs proposed to try their separate cases jointly?

In the Evans and Taylor cases, the district court concluded that Boston Scientific's removal "runs afoul of the clear statutory language, *i.e.*, that there is a single trial of 100 or more persons." Like Judge Easterbrook in an early Seventh Circuit CAFA case, we conclude that construing the statute to require a single trial of more than 100 claims would render 28 U.S.C. § 1332(d)(11) "defunct":

> A proposal to hold multiple trials in a single suit . . . does not take the suit outside § 1332(d)(11). . . . A trial of 10 exemplary plaintiffs, followed by application of issue or claim preclusion to 134 more plaintiffs without another trial, is one in which the claims of 100 or more persons are being tried jointly . . . .

Bullard v. Burlington N. Santa Fe Ry., 535 F.3d 759, 762 (7th Cir. 2008). Thus, as Judge Posner noted in a subsequent Seventh Circuit case, in determining whether plaintiffs have "proposed" that their claims be tried jointly, "the proposal can be implicit . . . [and t]he joint trial could be limited to one plaintiff (or a few plaintiffs) . . . . That form of bifurcation is common in class actions, and a mass action is a form of class action." Koral v. Boeing Co., 628 F.3d 945, 947 (7th Cir. 2011).

Framing the issue in this manner, the critical issue becomes whether the three groups of plaintiffs proposed that their claims be "tried jointly," in which case § 1332(d)(11)(B)(i) applies and the cases are removable, or simply asked that their respective claims be "consolidated or coordinated solely for pretrial proceedings," in which case § 1332(d)(11)(B)(ii)(IV) applies and the cases are not removable. The answer to this question requires careful review of the proceedings in the City of St. Louis Circuit Court. In that Court, cases are initially docketed for trial in Division I, where the presiding judge sits, and assigned to a motion division judge who prepares the case for trial. Then, as trial approaches, the presiding judge assigns the case to a general division judge for final disposition. However, Local Rule 6.2.1 permits the presiding judge to "assign extraordinary cases requiring individual and continuing attention to general divisions for trial setting, pretrial motions and trial." And Local Rule 6.2.4 provides that

> [w]henever there are three or more actions pending in this Circuit involving claims of personal injury by multiple plaintiffs against the same defendants or groups of defendants, arising out of exposure to a product . . . the Presiding Judge may reassign such cases to a single general division if the Presiding Judge determines that the administration of justice would be served by such reassignment.

Here, each plaintiff group moved for special assignment to a single judge under these rules. The Atwell group first moved to have its case assigned "to a single Judge for purposes of discovery and trial." The motion did not request a common assignment with other transvaginal mesh plaintiffs, but plaintiffs cited Rule 6.2.4 and noted that the issues in the transvaginal mesh cases "raise the potential for conflicted rulings through the discovery and motion process." The Taylor group filed a motion closely resembling Atwell's the next day, then amended its motion on June 3, 2013, to conform to the Evans group motion filed that day. Relying on Rules 6.2.1 and 6.2.4, the Evans and Taylor groups moved to have the other transvaginal mesh cases assigned to a single judge *for both pretrial and trial matters*, but each group noted it

was not seeking to consolidate with other cases. Both groups cited "avoiding conflicting pretrial rulings," "providing consistency in the supervision of pretrial matters," and "judicial economy" as reasons for the assignment.

On June 6, the presiding judge held a combined hearing on all three motions. At the hearing, plaintiffs' counsel argued:

ATWELL: [O]ur motion is to have it assigned to the judge that's going to try the case because of the complexity that's going to occur all the way through, that he should be the one to marshal how the case is going to be developed. . . . [How to proceed is] going to be up to the judge that's going to end up hearing the pretrial motions and ultimately try the case. You'll understand . . . we've got multiple plaintiffs. There's going to be a process in which to select the bellwether case to try.

EVANS/
TAYLOR: [Cases involving] a particular product[ ] should be assigned to a single judge because the same legal issues arise over and over . . . , and . . . it doesn't make sense to have inconsistent rulings in a Boston Scientific case from one judge and then [a transvaginal mesh case with a different defendant]. We need to have consistency. * * * We specifically said we don't want these cases consolidated. They should not be consolidated. We're simply asking your Honor to assign one single judge to handle these cases for consistency of rulings, judicial economy, [and] administration of justice.

On July 3, Boston Scientific removed all three cases to the Eastern District of Missouri, asserting that court has jurisdiction under CAFA because plaintiffs proposed to join their cases into a mass action with more than 100 plaintiffs. In Atwell, the district court construed counsel's hearing statements as requesting only that a single judge handle both the pretrial and trial proceedings *in the Atwell case*. The court saw no desire to consolidate Atwell with other transvaginal mesh cases and read the "bellwether" reference as a mere prediction, not a proposal. In Evans and Taylor, the

district court construed counsel as suggesting only *pretrial* coordination and saw no indication that consolidation with Atwell had been proposed.

In our view, the district courts erred in failing to follow (Evans and Taylor) or to properly apply (Atwell) the Seventh Circuit's decision in In re Abbott Laboratories, Inc., 698 F.3d 568 (7th Cir. 2012). In that case, several hundred plaintiffs filed ten personal injury actions against Abbott Labs in three state courts and moved the Supreme Court of Illinois to exercise its discretion under a Court rule allowing for "consolidated pretrial, trial, or post-trial proceedings." Id. at 570-71. Plaintiffs stated they were requesting consolidation "through trial" and "not solely for pretrial proceedings." Id. Abbott Labs removed. The district court remanded the cases. Plaintiffs did not "contemplate . . . a joint trial of the hundreds of claims asserted," the court concluded, noting that "so-called 'mass tort' cases are never tried in their entirety, and instead 'bellwether' claims selected by the parties are tried individually in order to answer difficult issues" common to all claims. Id. The Seventh Circuit reversed the remand order. Focusing both on what plaintiffs requested and on the necessary consequences of their request, the court explained:

> [P]laintiffs requested consolidation of their cases "through trial" and "not solely for pretrial proceedings." They further asserted that consolidation through trial "would also facilitate the efficient disposition . . . *without the risk of inconsistent adjudication* . . . . [I]t is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases. In either situation, plaintiffs' claims would be tried jointly.

Id. at 573 (emphasis in original). By contrast, in Romo v. Teva Pharmaceuticals USA, Inc., 731 F.3d 918, 921 (9th Cir. 2013), attorneys for many plaintiffs in forty product liability actions filed in California state courts asked the California Judicial Council to invoke a state rule of procedure allowing coordination of common actions "for all purposes." In affirming the district court's remand order, the panel majority

distinguished Abbott Labs because it involved consolidation rather than coordination, and because plaintiffs in Abbott Labs requested consolidation "through trial . . . thereby removing any question of [their] intent." Id. at 923. Judge Gould in dissent found Abbott Labs "both persuasive and relevant" because plaintiffs did not limit their request to pretrial matters. When plaintiffs urged the state court to coordinate many state actions to avoid inconsistent judgments, Judge Gould concluded:

> it is a natural and probable consequence of the grant of the petition seeking coordination, indeed it seems an inevitable result, that these varied actions must be tried together, or coordinated in a way to avoid inconsistent results as with bellwether trials, which amounts to the same thing. . . . [T]he circumstances presented here are a proposal for a joint trial within the meaning of what Congress said and intended in CAFA . . . .

Id. at 928 (Gould, J., dissenting). We agree with Abbott Labs and with Judge Gould's interpretation of the statute and the Abbott Labs decision.

Here, at the motion hearing, counsel for the Evans and Taylor plaintiffs, while disavowing a desire to consolidate cases for trial, nonetheless urged the state court to assign the claims of more than 100 plaintiffs to a single judge who could "handle these cases for consistency of rulings, judicial economy, [and] administration of justice." Counsel for the Atwell plaintiffs was even more explicit, explaining that the motion was intended "to have it assigned to the judge that's going to try the case because of the complexity that's going to occur all the way through . . . . There's going to be a process in which to select the bellwether case to try."

We disagree with the district court's conclusion that counsel's "anticipation of a bellwether trial" was simply "a prediction of what might happen if the judge decided to hold a mass trial." That was a quote from Judge Posner's opinion in Koral. But plaintiffs in Koral were *resisting* defendant's motion to dismiss, not supporting a

-9-

motion to place multiple cases in a procedural setting where bellwether trials would be the normal way to efficiently prevent inconsistent judgments. 628 F.3d at 946. Here, counsel's statements revealed the purpose of their motions -- a joint assignment in which the "inevitable result" will be that their cases are "tried jointly." As in Abbott Labs, "it is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases." 698 F.3d at 573. We conclude that, at the time the cases were removed, the motions for assignment to a single judge filed by the three plaintiff groups to the same state circuit court, combined with plaintiffs' candid explanation of their objectives, required denial of the motions to remand. See Hargis v. Access Capital Funding, LLC, 674 F.3d 783, 789 (8th Cir. 2012) (removal jurisdiction is evaluated at the time of removal).[2]

For these reasons, we grant Boston Scientific's petitions for permission to appeal, vacate the district court orders remanding the three cases to state court, and remand the cases to the district court for further proceedings not inconsistent with this opinion. Because we rule on the petitions for permission to appeal and the merits simultaneously, we fully dispose of this appeal within sixty days of granting the petitions, as 28 U.S.C. § 1453(c)(2) requires. See Patterson v. Dean Morris, L.L.P., 444 F.3d 365, 370 (5th Cir. 2006) (sixty-day period begins on the day leave to appeal is granted); accord In re Mortg. Elec. Reg. Sys., Inc., 680 F.3d 849, 852-53 (6th Cir. 2012) (collecting cases). We grant Boston Scientific's motion to consolidate the

---

[2]Subsequent events bear out this conclusion. On September 10, the presiding judge of the City of St. Louis Circuit Court granted plaintiffs' motion to assign the Atwell case to a general division judge under Local Rule 6.2.1. The Court stated it was "assigning this matter to a judge for trial setting, pretrial motions *and trial* under Local Rule 6.2.1. For purposes of judicial economy this Court intends to assign other transvaginal mesh cases to the same judge." We recently noted in affirming a remand order that "immediate removal would be timely and almost certainly proper" if the CAFA jurisdictional bar should later evaporate in the state court. Hurst v. Nissan N. Am., Inc., 511 F. App'x 584, 586-87 (8th Cir. 2013) (unpublished per curiam).

petitions for permission to appeal and the motions by counsel for Evans and Taylor for leave to file a sur-reply.

_____