**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUDITH ROMO; VINCENT TALDONE;
ROBIN TAYLER; MARGARET
TAYLOR; RANDY TAYLOR; RAY
TEETS; LAWRENCE TELLS; KATHRYN
TEMCHACK; CHARLES TERRY;
VERONICA TERRY; ROBERTA
THORNE; MARGARET TIVIS; LINDA
TODD; DELORES TOOHEY;
DEBRA TOURVILLE; DENA TSOUALS;
ALLEN TURNER; CAROLYN TURNER;
WANDA TURNER; STARLET TYRONE;
GLORIA UNDERWOOD; HENRY
UNDERWOOD; JANICE VANISON;
WILLIAM VERHEYEN; CHARLES
VILDIBILL; SHARON WALLGREN;
PAM WALSH; SHARON WALSH;
KEESHA WARRIOR; LATANGA
WASHINGTON; DARLENE WATT;
JAMES WEISS; WESLEY WELBORNE,
III; DEBRA WHEELER; MARSHA
WHITT; CAROLYN WHYNO; CECILIA
WILCKENS; SANDRA WILEMON;
STELLA WILKERSON-CLARK; JOANN
WILLIAMS; JOYCE WILLIAMS; ROSE
WILLIAMS; SHANTAS WILLIAMS;
MARY WILSON; ROSE WILSON;
PATSY WINZEY; JIMMIE WISE; RUTH

No. 13-56310

D.C. No.
5:12-cv-02036-
PSG-E

OPINION

WOLFSON; JUANITA WOODSON;
LYNNE WYSOCKY, single
individuals,

*Plaintiffs-Appellees*,

v.

TEVA PHARMACEUTICALS USA,
INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
August 30, 2013—Pasadena, California

Filed September 24, 2013

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Ivan L.R. Lemelle, District Judge.[*]

Opinion by Judge Rawlinson;
Dissent by Judge Gould

---

[*] The Honorable Ivan L.R. Lemelle, District Judge for the U.S. District
Court for the Eastern District of Louisiana, sitting by designation.

## SUMMARY[**]

### Class Action Fairness Act

The panel affirmed the district court's order remanding to state court a case that was originally removed to federal court under the Class Action Fairness Act's mass action provision.

The Class Action Fairness Act ("CAFA") authorizes federal removal for mass actions when "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). The panel held that a petition filed pursuant to California Code of Civil Procedure 404, in which a group of attorneys asked the California Judicial Council to establish a coordinated proceeding for all California state actions involving the pain reliever propoxyphene, was not a proposal in substance for those actions to be tried jointly under CAFA. The panel concluded, therefore, that this CAFA jurisdictional requirement was not met under the totality of the circumstances.

Dissenting, Judge Gould would conclude that CAFA's mass action jurisdictional requirements were met.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Karin Bohmholdt (argued), Ginger Pigott, and Amy Alderfer, Greenberg Traurig, LLP, Los Angeles, California; Lori G. Cohen and Victoria D. Lockard, Greenberg Traurig, LLP, Atlanta, Georgia; Elliot H. Scherker, Greenberg Traurig, PA, Miami, Florida, for Defendant-Appellant.

Stuart B. Esner (argued) and Andrew N. Chang, Esner, Chang & Boyer, Pasadena, California; Elise R. Sanguinetti, Khorrami Boucher Sumner Sanguinetti, LLP, Oakland, California; J. Paul Sizemore, The Sizemore Law Firm, El Segundo, California; Matthew J. Sill, The Sill Law Group PLLC, Edmond, Oklahoma, for Plaintiffs-Appellees.

Jeremy B. Rosen and Mark A. Kressel, Horvitz & Levy LLP, Encino, California, for Amici Curiae Chamber of Commerce of the United States and PHRMA.

Kate Comerford Todd and Tyler R. Green, National Chamber Litigation Center, Inc., Washington, D.C., for Amicus Curiae Chamber of Commerce of the United States.

James M. Spears and Melissa B. Kimmel, PHRMA, Washington, D.C., for Amicus Curiae PHRMA.

Richard A. Samp and Cory L. Andrews, Washington Legal Foundation, Washington, D.C., for Amicus Curiae Washington Legal Foundation.

**OPINION**

RAWLINSON, Circuit Judge:

This case presents the issue of whether removal was proper under the "mass action" provision of the Class Action Fairness Act of 2005 (CAFA), Pub. L. No. 109-2, 119 Stat. 4 (2005), when plaintiffs moved for coordination pursuant to California Code of Civil Procedure section 404.  CAFA authorizes federal removal  for mass actions when "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact. . . ."  28 U.S.C. § 1332(d)(11)(B)(i).  Because we conclude that this CAFA jurisdictional requirement was not met under the totality of the circumstances in this case, we affirm the district court's remand order.

**I**

Defendant-Appellant Teva Pharmaceuticals USA, Inc. (Teva) appeals the district court's order remanding this case to state court.  This case was one of twenty-six pending before the district court alleging injuries related to the ingestion of propoxyphene, an ingredient found in the Darvocet and Darvon pain medications, as well as in their generic brand counterparts.  There are additional propoxyphene cases pending in multidistrict litigation in the Eastern District of Kentucky.  *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379 (E.D. Ky. 2011).

Propoxyphene is a pain reliever that was used in the United States to treat mild to moderate pain from 1957

through November, 2010, when drugs containing propoxyphene were taken off the market because of the Food & Drug Administration's safety concerns. Teva held the rights to the generic formulary of Darvocet and Darvon, and Plaintiffs allege that Teva was involved in all aspects of the creation, distribution, and sale of generic propoxyphene products.

To date, more than forty actions have been filed in California state courts regarding products containing propoxyphene. On October 23, 2012, a group of attorneys responsible for many of the propoxyphene actions filed a petition asking the California Judicial Council to establish a coordinated proceeding for all California propoxyphene actions pursuant to California Code of Civil Procedure section 404. Section 404.1 provides:

> Coordination of civil actions sharing a common question of fact or law is appropriate if one judge hearing all of the actions for all purposes in a selected site or sites will promote the ends of justice taking into account whether the common question of fact or law is predominating and significant to the litigation; the convenience of parties, witnesses, and counsel; the relative development of the actions and the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of the courts; the disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the likelihood of settlement of the actions without further litigation should coordination be denied.

After Plaintiffs' petition for coordination was filed, Teva removed the case to federal district court under CAFA's mass action provision.

CAFA provides federal district courts with original jurisdiction over "mass actions" if the actions meet all of the statutory requirements. CAFA defines a mass action as:

> any civil action . . . in which monetary relief claims of 100 or more persons are *proposed to be tried jointly* on the ground that the plaintiffs' claims involve common questions of law or fact, . . .

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). The only disputed issue in this case is whether Plaintiffs' petition for coordination constitutes a proposal to be tried jointly under CAFA.

The district court found that there was no federal jurisdiction under CAFA  because Plaintiffs' petition for coordination did not constitute a proposal to try the cases jointly, and remanded the case back to state court. The district court distinguished this case from the Seventh Circuit's decision in *In re Abbott Laboratories, Inc.*, 698 F.3d 568 (7th Cir. 2012), explaining that Plaintiffs' petition for coordination differed from the Plaintiffs' consolidation request in *Abbott* because Plaintiffs' petition focused on pretrial matters while the Plaintiffs' consolidation request in *Abbott* specifically sought consolidation "through trial."

Defendants sought permission to appeal the district court's remand order, which we granted on July 26, 2013. We review the district court's remand order *de novo*. *See*

*Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d at 676, 679 (9th Cir. 2006).

## II

The statutory issue for us to decide is whether the petition seeking coordination of the California propoxyphene actions was a proposal in substance for those actions to be tried jointly. This is a question of first impression in our circuit, as it was for the Seventh Circuit in *Abbott*.

We start from the well-established premise that the removal statutes are to be strictly construed. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). A corollary precept is that we apply a presumption against removal and construe any uncertainty as to removability in favor of remand. *See id.*; *see also Tanoh v. Dow Chemical Corp.*, 561 F.3d 945, 953 (9th Cir. 2009); *Abrego Abrego*, 443 F.3d at 685. We have correctly observed that CAFA's mass action provision is "fairly narrow," *Tanoh*, 561 F.3d at 953, given that a qualifying mass action will only be present if there is an aggregate amount in controversy of five million dollars or more, at least one plaintiff who is a citizen of a state or foreign state different from that of any defendant, and "monetary relief claims of 100 or more persons [that] are proposed to be tried jointly." *Id.*; *see also* 28 U.S.C. § 1332(d). We expressly observed in *Tanoh* that CAFA "includ[es] only actions in which the trial itself would address the claims of at least one hundred plaintiffs" and excludes "any civil action in which . . . (IV) the claims have been consolidated or coordinated solely for pretrial proceedings." 561 F.3d at 954; 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). And *Tanoh* makes clear, consistent with the plain language of CAFA, that the proposal to try claims jointly must come from

the plaintiffs. 561 F.3d at 953–54. Further, if the statutory requirements under CAFA are not met, *Tanoh* rejects the idea that we can avoid these statutory terms merely by recourse to general statements in CAFA's legislative history, or to the theory that plaintiffs should not be able to "game" jurisdictional statutes to remain in state court. *Id*. at 954.

*Tanoh* also instructs that plaintiffs are the "masters of their complaint," and do not propose a joint trial simply by structuring their complaints so as to avoid the one hundred-plaintiff threshold. 561 F.3d at 953, 956; *see also Anderson v. Bayer Corp*., 610 F.3d 390, 393 (7th Cir. 2010); *Scimone*, 720 F.3d at 883–84. Under this view, plaintiffs can structure actions in cases involving more than one hundred potential claimants so as to avoid federal jurisdiction under CAFA.[1]

Plaintiffs argue, and the district court agreed, that their analogous petition for coordination was not a proposal to try the cases jointly. We also agree. California Code of Civil Procedure section 404 allows the coordination of "all of the actions for all purposes." However, the plaintiffs' petition for coordination stopped far short of proposing a joint trial. This fact is important because, as discussed, both the Supreme

---

[1] Amicus curiae Chamber of Commerce of the U.S.A. and amicus curiae PhRMA essentially argue that we should revisit *Tanoh* and that it has lost its precedential value, urging that plaintiffs should not be able to structure their complaints to avoid federal jurisdiction in light of the purposes of CAFA to curb class action and mass action abuses that have occurred in state courts. We reject this argument because we agree with the reasoning of *Tanoh*, because as a three-judge panel we do not have authority to overrule a prior circuit precedent, and because the Chamber of Commerce's position would put us at odds with the Seventh Circuit, which cited *Tanoh* approvingly in *Abbott*, and the Eleventh Circuit, which did so in *Scimone*. *See Abbott*, 698 F.3d at 572; *Scimone*, 720 F.3d at 884.

Court and our court recognize that the plaintiff is, and should be, in control of selection of the litigation forum. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (reiterating in the CAFA context, that plaintiffs are the "masters of their complaints"); *see also Tanoh*, 561 F.3d at 953 (referencing "the well-established rule that plaintiffs as masters of their complaint, may choose their forum by selecting state over federal court . . .").

Plaintiffs asked for coordination under section 404, and submitted a Memorandum of Points and Authorities in support of the petition for coordination. We now turn to that memorandum to discern whether plaintiffs proposed that the claims of 100 or more persons were "to be tried jointly." 28 U.S.C. § 1332(d)(11)(B)(i).

On page 6 of the Memorandum of Points and Authorities, plaintiffs gave the following explanation for seeking coordination:

> Petitioners' counsel anticipates that the actions will . . . involve duplicative requests for the same defendant witness depositions and the same documents related to development, manufacturing, testing, marketing, and sale of the Darvocet Product. Absent coordination of these actions by a single judge, there is a significant likelihood of duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues.

One would be hard pressed to parse a proposal for a joint trial from this language.  Rather, the obvious focus was on pretrial proceedings, *i.e.*, discovery matters.

On page 7 of the memorandum, plaintiffs informed the court that coordination was also sought because "[u]se of committees and standardized discovery in a coordinated setting will expedite resolutions of these cases, avoid inconsistent results, and assist in alleviating onerous burdens on the courts as well as the parties."  Again, we see emphasis on pretrial proceedings with no mention of a joint trial.

On page 8, the plaintiffs urged coordination on the following bases:

> One judge hearing all of the actions *for all purposes* in a selected site or sites will promote the ends of justice; Common questions of fact or law are predominating and significant to the litigation; Coordination may serve the convenience of parties, witnesses and counsel the relative development of the actions and the work product of counsel; Coordination may facilitate the efficient utilization of judicial facilities and manpower; Coordination may enhance the orderly calendar of the courts; Without coordination, the parties may suffer from disadvantages caused by duplicative and *inconsistent* rulings, orders or *judgments* . . .

(Emphases added).

Isolation of the phrases "for all purposes," "inconsistent judgments,"and "conflicting determinations of liability" to support a conclusion that the plaintiffs sought a joint trial completely ignores all references to discovery, including on the same page containing the reference to liability, where Plaintiffs stated: "[I]n light of the similarity of the actions, there will be *duplicate discovery obligations* upon the common defendants *unless coordination is ordered*. Coordination before initiation of discovery in any of the cases will eliminate waste of resources and will facilitate economy. . . ." (Emphases added). As we read the plaintiffs' petition for coordination, it is quite a stretch to discern a request for joint trial when the clear focus of the petition is on pretrial matters. Reliance on nine words in the petition to the exclusion of all else is inconsistent with the principle that any doubt about federal jurisdiction be resolved in favor of remand. *See Scimone*, 720 F.3d at 882; *see also Abrego Abrego*, 443 F.3d at 685. In particular, Defendants' reliance on the plaintiffs' reference to inconsistent judgments is on shaky ground because judgments may be rendered outside the confines of a trial. Default judgments and summary judgments come readily to mind. *See* Federal Rules of Civil Procedure 55 and 56 (providing for entry of judgment prior to trial).

Neither are we persuaded that we should reach the same result as the Seventh Circuit in *Abbott*. Not only did that case involve a completely different procedure, consolidation as opposed to coordination, *see* 698 F.3d at 570, the plaintiffs' request in that case explicitly and expressly referenced "consolidation of the cases through trial and not solely for pretrial proceedings," thereby removing any question of the plaintiffs' intent. *Id*. at 571 (footnote reference and internal quotation marks omitted).

This case also differs from *Mississippi ex rel. v. AU Optronics*, 701 F.3d 796 (5th Cir. 2012), where the Fifth Circuit concluded that federal jurisdiction existed under CAFA when the State of Mississippi brought an action under the Mississippi Consumer Protection Act and the Mississippi Antitrust Act against defendants who manufactured liquid crystal display panels and harmed consumers by charging artificially inflated prices. *See id*. at 798–800. The Fifth Circuit concluded that the real parties in interest included the State and the individual consumers who purchased the products. *See id*. at 802. Because there were more than one hundred consumer claims at issue in the single lawsuit filed by the State, the Fifth Circuit held that CAFA conferred jurisdiction upon the federal court over the "mass action." *Id*.

Unlike the *AU Optronics* case, the plaintiffs here have filed separate lawsuits, none of which have been initiated by the State, so the rationale articulated by the Fifth Circuit is inapposite, even were we inclined to adopt it.[2]

Finally, we consider the rulings of three different district court judges in this circuit who have determined that similar requests for coordination under this California procedural rule were not the equivalent of a request for a joint trial. *See Gutowski v. McKesson Corp*., No. C 12-6056 CW, 2013 WL

---

[2] Amicus curiae Washington Legal Foundation argues that "joint trial" includes cases resolved in conjunction with each other, relying on the dictionary definition of "joint" and the statute's plain language. We agree that "joint trial" does not mean everyone sitting in the courtroom at the same time. However, as made obvious in this opinion, we disagree that mere invocation of the California coordination provision is sufficient to constitute a proposal for joint trial. Rather, as we have done here, we look to Plaintiffs' petition and supporting documents to determine the extent of Plaintiffs' request for coordination.

675540 (N.D. Cal. Feb. 25, 2013); *Posey v. McKesson Corp.*, No. C 12-05939 RS, 2013 WL 361168 (N.D. Cal. Jan. 29, 2013); *Rice v. McKesson Corp.*, No. C 12-05949 WHA, 2013 WL 97738 (N.D. Cal. Jan. 7, 2013).    These eminent California judges were practitioners in California prior to taking the bench and their decisions, with their considerable knowledge of California procedural rules, reinforce our view of the appropriate disposition of this case.  We would affirm this fourth California district court judge's decision to remand this case to state court.

### III

Because we conclude that Plaintiffs' petition for coordination was not a proposal to try the cases jointly, we **AFFIRM** the district court's order granting Plaintiffs' motion to remand.[3]

---

[3] We recognize that we have discretion to consider alternative bases for the exercise of federal jurisdiction, *see Nevada v. Bank of America Corporation*, 672 F.3d 661, 673 (9th Cir. 2012).  We agree with the district court that there is a lack of federal question jurisdiction because Plaintiffs' state law claims do not "aris[e] under the Constitution, laws, or treaties of the United States.  *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 805, 817 (1986).

We also agree with the district court's conclusion that complete diversity is lacking between the parties inasmuch as plaintiff Romo and defendant McKesson are both California citizens.  *See Wisc. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (requiring complete diversity of citizenship for federal jurisdiction).

GOULD, Circuit Judge, dissenting:

I respectfully dissent.

We must decide whether removal is proper under the "mass action" provision of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), when plaintiffs move for coordination pursuant to California Code of Civil Procedure section 404 **and justify their request in part by asserting a need to avoid inconsistent judgments**.[1] CAFA extends federal removal jurisdiction for mass actions when "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11). I would hold that these requirements are met, and would reverse the district court's remand order.

# I

The issue before us is whether Plaintiffs' petition to coordinate actions under California Code of Civil Procedure section 404 constitutes a proposal for these actions in California state court to be tried jointly, making the actions a "mass action" subject to federal jurisdiction under CAFA. I agree with the majority that federal courts are courts of limited jurisdiction, and the general rule is that removal

---

[1] In the petition Plaintiffs asked for coordination of their lawsuits for reasons including concerns that there could be potential "duplicate and inconsistent rulings, orders, or judgments," and that without coordination, "two or more separate courts . . . may render different rulings on liability and other issues." After this petition for coordination was filed, Teva removed the case to federal district court under CAFA's mass action provision.

statutes are strictly construed against removal.[2]  *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008).  As such, I turn to the language and purpose of CAFA.  The statutory issue for us is whether the petition that was filed in this case seeking coordination of the California propoxyphene actions was a proposal in substance for those actions to be tried jointly.  I regret that the majority here misinterprets CAFA and does so in a way that creates a circuit split, for practical purposes, with the Seventh Circuit's decision in *Abbott*.

Congress enacted CAFA in 2005 to "curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts."  *Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 952 (9th Cir. 2009) (citation omitted).  CAFA further extends federal jurisdiction over "mass action" cases when several  requirements are met, although only the "proposed to be tried jointly" requirement is at issue here.  *See* 28 U.S.C. § 1332(d)(2), (6), (11)(A).

Proposals for joint trials may be made implicitly, and a "joint trial" may "take different forms as long as the plaintiffs' claims are being determined jointly."  *Abbott*, 698 F.3d at 573; *see Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008).  For example, an "exemplary" or "bellwether" trial may only feature a small group of plaintiffs, but it is still a joint trial when the claims or issues of a larger group are precluded or otherwise decided

---

[2] The Seventh Circuit has held that CAFA "must be implemented according to its terms, rather than in a manner that disfavors removal of large-stakes, multi-state class actions," and I agree.  *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011).

by the results.  *See Koral v. Boeing, Co.*, 628 F. 3d 945, 947
(7th Cir. 2011).  We should be looking at the reality of joint
trial proposal, not at how a party may characterize its own
actions.

What is critical is that this appeal concerns a set of actions
filed in state court followed by a petition by Plaintiffs to
coordinate, in part to avoid inconsistent judgments.  And so
it is on that aspect of this case, distinguishing it from *Tanoh*,
that we should be focused.[3]

My disagreement with the majority is over the import of
the coordination motion and the reasons given for it.  The
majority focuses on the part of the petition mentioning
pretrial discovery and chooses to downplay that part of the
petition urging that there be no inconsistent judgments.  In
doing this, the majority disregards that the proviso in CAFA
makes clear only that matters consolidated exclusively for
pretrial purposes are not properly removed to federal court.
The majority does not try even to argue, nor could it do so
correctly here, that the petition for coordination is *limited* to
pretrial matters.  Instead, it argues that the petition "stopped
far short of proposing a joint trial."  But there is no applicable
judicial precedent supporting the majority's proposition that
the focus of a coordination petition mentioning pretrial
matters in large part may override the reality of a plaintiff's

---

[3] The amicus curiae Chamber of Commerce of the U.S.A. and amicus
curiae PhRMA want us to revisit *Tanoh*, to say that it has no vitality and
that plaintiffs cannot structure their complaints to avoid federal
jurisdiction in light of the purposes of CAFA to curb class action and mass
action abuses that have occurred in state courts.  Although this argument
by the Chamber of Commerce has some weight, I agree with the majority
that this argument misunderstands the power of a three-judge panel, which
may not overrule a prior circuit precedent.

proposal to try claims jointly when the petition seeks relief that would require joint trial. The majority apparently would require an explicit request for a joint trial, whereas I conclude that the substance of what was done is controlling. Recourse to the general principle that doubts on removal should be resolved by favoring the plaintiffs' forum choice simply does not answer that this case fits CAFA removal like a glove under a reasonable assessment of what is a proposal for joint trial.

Our Ninth Circuit precedent in *Tanoh* suggests that plaintiffs are the "masters of their complaint," and do not propose a joint trial simply by structuring their complaints so as to avoid the one hundred-plaintiff threshold. 561 F.3d at 953, 956; *see Anderson v. Bayer*, 610 F.3d 390, 393 (7th Cir. 2008); *Scimone v. Carnival Corp.*, 720 F.3d 876 (11th Cir. 2013). That is not surprising and is analogous to the fact that individuals and corporations can structure transactions so as to avoid statutory prohibitions or terms.

But the United States Supreme Court has recently pointed out that there are limits to how far plaintiffs may go in structuring their complaints to avoid federal jurisdiction. Thus in *Standard Fire v. Knowles*, the Supreme Court rejected the ability of a proposed class action plaintiff to stipulate that damages would not exceed five million dollars. 568 U.S. —, 133 S. Ct. 1345, 1350, 185 L. Ed. 2d 439 (2013) ("[T]he stipulation at issue here can tie Knowles' hands, but it does not resolve the amount-in-controversy question in light of his inability to bind the rest of the class."). In that case, the plaintiff unsuccessfully attempted to stipulate an amount-in-controversy below five million dollars before his proposed class had been certified. *Id.* at 1347. *Standard Fire* arose in the context of a challenge to plaintiffs' counsel's

attempt to limit damages before class certification, and the Court recognized that plaintiffs' counsel could not execute a damages stipulation binding class claimants not yet joined. So *Standard Fire* is in my view not necessarily controlling on the issue before us as to whether there has been a proposal for joint trial.   Because in *Standard Fire* the Supreme Court appeared to reiterate that plaintiffs are the "masters of their complaint," *id.* at 1350, if Plaintiffs merely had structured separate actions with less than one hundred claimants, and did not seek to coordinate them, I must currently think that the Supreme Court would hold, as we did in *Tanoh*, that no mass action was presented.   If plaintiffs are masters of their complaints and can plead in a way to avoid federal jurisdiction, they remain free to "game" the system to some degree, including by joining less than one hundred plaintiffs in many suits in state court, so long as those cases are separate.   Nonetheless, we have in this case a request to California courts to coordinate the actions and reasons given for coordination, including to avoid inconsistent judgments. That leads me to recognize that the issue here, stated more precisely, is whether when plaintiffs seek to coordinate under California law many state actions, and urge the state court that coordination is necessary to avoid inconsistent judgments, that is a proposal for joint trial within the meaning of CAFA.

Plaintiffs argue, and the majority agrees, that their petition for coordination was not a proposal to try the cases jointly.   I must respectfully disagree.   California Code of Civil Procedure section 404 allows the coordination of "all of the actions for all purposes," and presents a factor-based test to determine whether coordination is appropriate.   Plaintiffs asked for coordination under section 404, and submitted a memorandum in support of the petition for coordination.

Reasons Plaintiffs listed as supportive of their petition, including the danger of inconsistent judgments and conflicting determinations of liability, in my view could only be addressed through some form of joint trial. When Plaintiffs asked the California Judicial Council to coordinate their cases for reasons that only a joint trial could address, they implicitly proposed a joint trial, bringing their cases within CAFA's mass action provision.[4] That is how I see it and that is what impels my dissent.

Plaintiffs further contend that we should interpret the phrase "joint trial" to mean "a joint trial where more than one party (and for purposes of CAFA 100 or more parties) simultaneously present their claims to a trier of fact." I would reject this interpretation because it violates the canon against reading a statutory provision in such a way as to render another provision superfluous. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3228, 177 L. Ed. 2d 792 (2010) (citation omitted). If our court were to adopt Plaintiffs' interpretation of "joint trial," the mass action statutory exception for "claims [that] have been consolidated or coordinated solely for pretrial proceedings" would be meaningless because a

---

[4] Amicus curiae Washington Legal Foundation argues that "joint trial" includes cases resolved in conjunction with each other, relying on the dictionary definition of "joint" and the statute's plain language. This argument has some weight, and with the majority I would say that "joint trial" does not mean everyone sitting in the courtroom at the same time. Washington Legal Foundation also asserts that whenever the California coordination provision is invoked, that in itself will be enough to constitute a proposal for joint trial. I would not need to go so far to resolve this case because I rely in part on Plaintiffs' petition's explanation that there was concern to avoid inconsistent judgments, and because this case does not factually present as one where only coordination of pretrial matters was requested.

proposal for anything short of a single massive trial for all claimants would already fail the mass action requirement. 28 U.S.C. § 1332(d)(11)(B)(ii).[5]  I would reject Plaintiffs' narrow interpretation of "joint trial" to give meaning to the exception above.

Although Plaintiffs argue that the Seventh Circuit decision in *Abbott* is inapplicable here, and the majority accepts this argument, I would conclude that *Abbott* is both persuasive and relevant to this case.  *Abbott* addresses a consolidation request "through trial" under Illinois Supreme Court Rule 384.[6]  Plaintiffs correctly note that the Illinois rule differs from the language of California Code of Civil Procedure section 404, but still I would conclude that the Seventh Circuit's reasoning is persuasive here.  Similar to the Seventh Circuit in *Abbott*, we are examining a request for coordination or consolidation that lists certain goals that could only be accomplished through a joint trial.  *See Abbott*, 698 F.3d at 573.  As the Seventh Circuit did, we should have concluded that Plaintiffs were proposing a joint trial, and that federal jurisdiction under the CAFA mass action provision is proper.

---

[5] I agree with Chief Judge Easterbrook of the Seventh Circuit that "[c]ourts do not read statutes to make entire subsections vanish into the night." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008).

[6] Illinois Supreme Court Rule 384(a) says: "When civil actions involving one or more common questions of fact or law are pending in different judicial circuits, and the supreme court determines that consolidation would serve the convenience of the parties and witnesses and would promote the just and efficient conduct of such actions. The supreme court may . . . transfer all such actions to one judicial circuit for consolidated pretrial, trial, or post-trial proceedings."

In light of the specific reasons given for coordination of the California actions that involve propoxyphene, it is a natural and probable consequence of the grant of the petition seeking coordination, indeed it seems an inevitable result, that these varied actions must be tried together, or coordinated in a way to avoid inconsistent results as with bellwether trials, which amounts to the same thing. If the natural and probable consequence of coordination of separate actions has an impact indistinguishable from joint trial, then it is sensible to treat such a petition for coordination as a proposal for joint trial. I conclude that the circumstances presented here are a proposal for a joint trial within the meaning of what Congress said and intended in CAFA, and for that reason would reverse the district court's order granting Plaintiffs' motion to remand.[7]

---

[7] In light of what I would decide, I would not need to reach Defendants' alternative arguments that federal subject-matter jurisdiction exists on other grounds.